Good morning, honors. I'm Manuel Rios and I represent the petitioner in this case, Mr. Martinez, and I'd like to reserve two minutes for rebuttal. This is an appeal from the Board of Immigration Appeals. Summary affirmance of the immigration judge's denial of Mr. Martinez's asylum claim. Mr. Martinez is a native and citizen of Guatemala and a Garifuna, a race that consists of a mixture of African and indigenous blood. Mr. Martinez's claim is based on a pattern of mistreatment and physical harm that he suffered at the hands of the general population and the police of Guatemala. The immigration judge denied his claim, finding Mr. Martinez generally credible, however, that he also embellished, so it was deemed a mixed credibility finding. In addition, the immigration judge found that Mr. Martinez's, what he had endured, did not rise to the level of persecution. The two issues before the court today are, number one, whether or not the mixed credibility finding by the immigration judge is supported by substantial evidence, and number two is, did Mr. Martinez suffer past persecution as opposed to discrimination or harassment, as the immigration judge stated. In regards to the credibility finding, there's a threshold issue. In the wake of Colubi, whether or not there can actually be any kind of mixed credibility findings. In Colubi, this court found that the inherent irony in finding a petitioner credible yet incredible on the same issue. And that's basically what we have here, Your Honor. Well, could you find a petitioner credible as to certain claims that he makes and other claims that he makes not credible, that certain incidents occurred and certain ones didn't? Why would that not be a reasonable finding? Well, Your Honor, I think that that's possible, but the whole issue of credibility, if the immigration judge were to find that he was not credible as if some of these incidents didn't happen, that would tend to make him incredible in general. Well, I mean, somebody can say, you know, I was assaulted three times and be assaulted three times. And then say, in addition to that, you know, this gang of pirates came in and stole all my property and said they were going to transport me somewhere. And he could say that story, I don't believe. Well, that's correct, Your Honor. And so our position is, is that basically if Colubi is confined to mixed credibility findings on the same exact issues, then the immigration judge's mixed credibility finding should be confined to the specific instance, in this case, the allegation that Mr. Martinez was under constant attack. Well, that's what I was going to ask you. Isn't that what the finding was, that he believed him as to these specific incidents, but he did not believe that he was generally followed and generally, you know, harassed as a regular thing other than the specific incidents that he found? Is that the way you read the decision? That's one way to read it, Your Honor, and that does seem to be a reasonable way to read it. And is that not a reasonable finding? Well, that would be a reasonable finding, Your Honor. And if that were the case, then that would be a reasonable finding that were based on permissible reasons. The three reasons given or argued by the government that were given by the immigration judges are not legitimate factors upon which to base an adverse credibility finding. The first issue, Your Honor, of where Mr. Martinez was afforded better jobs and better educational opportunities is based on the immigration judge's conjecture of how that society works and a false correlation stating somehow that if someone were able to get some kind of educational opportunity, that they possibly couldn't be persecuted or if they got a good job, they couldn't be persecuted. In fact, the inverse is true. If someone had a high-paying job and were visible to the public, they would be a resentment to the normal people who weren't afforded it. Counsel, given the evidence of rampant poverty and unemployment in Guatemala, it's not too far of a stretch on the IJA's part to surmise that the kind of employment that Mr. Martinez had was good, solid employment in Guatemala, isn't it? Well, that's true, Your Honor. We would agree that it is good, solid employment. However, that doesn't have anything to do, it's based on conjecture, that somehow some kind of false correlation that if you have a good job, you can't possibly be the subject of discrimination. It happens here in the United States where people have good jobs. Being the subject of discrimination is not itself evidence of persecution. That is correct, Your Honor. However, persecution is the pattern of mistreatment and discrimination, which includes the physical harm that Mr. Martinez submitted to the immigration judge, which was not questioned by the IJA, is persecution. It's physical harm. This Court has consistently found physical harm to constitute persecution. And the immigration judge has tried to distinguish this as being somehow a discrimination or harassment. In fact, this Court in Duarte de Guinap, another Guatemalan case, stated, differentiated between what the difference is between persecution and discrimination. The Court found that discrimination involves property damage and economic loss, whereas persecution involves physical harm. And this case doesn't involve just one instance of physical harm. This case involves multiple instances of physical harm over a prolonged period. This is a pattern. Could you specify the particular incidence of physical harm upon which you rely? I certainly can, Your Honor. The administrative record at 106 in August of 1997, where Mr. Martinez was surrounded by the general population, apparently rescued, ostensibly rescued by the police and then beaten by the police. That's one account. So he suffered both physical harms by the general population. Now, wait a minute. Where's the part about he was beaten by the police after that? I got the part about he reported to the police, but he says they didn't do anything. Okay. Excuse me, Your Honor. And that would be one. It's still physical abuse. Physical abuse by non-police people. Police say we can't do anything. That's correct. So it's a failure. The government can't control this group. Well, or at least didn't. How much evidence do we have on that? I mean, if he comes and says, look, I was just surrounded, just beaten by a bunch of people, and he says, well, do you know any of their names? Do you know where they live? Do you know what they look like? At some point, the police might say, well, there isn't anything you can do, unless you come up with something more specific. That's not a refusal to address a problem. Well, I understand that, Your Honor. But if you look at the context where the police actually rescued him, they could have done something when they found him surrounded. It's not like he was just laying in the street. No, the police caught them in the act. No, they did not. Where do you know the police caught them in the act? Well, it says that the people beat him, pointed a gun at him, and threatened him. Oh, I'm sorry. I'm confusing this with the December 1997 attack. Okay. So this one, they beat him up. They didn't rob him. They hit him with the butt of the pistol. It's unclear why it stopped, but it did. He goes to the police. They say they can't do anything about it because it's too late. Okay. Next. And the next one, December 1997, where he was the recipient of bottles of cans being thrown out of death threats. And when the police arrived, they arrested Mr. Martinez. And then number of ---- And on that one, okay, then they hit me. Then the police was called. They arrested me. They asked me what nationality it was.  Then they hit me. They hit me a lot. And finally, they liberated me after three hours. Okay. Why did they? Because of my color, they didn't believe I was Guatemalan. Right? Okay. Right. They called him dark, dark one, black one, chocolate one. That's that episode. Okay. That seems to be the nexus component. And then in December of 1998, there was another, the third instance of physical abuse where he was stoned and taunted by the local people. And I would admit that the stoning in itself, like, for example, in Prasad and lots of ---- And where's the page on that one? 109, Your Honor. Yeah. And he did not go to the police after that one. That is correct. I would concede that, you know, that the stoning in itself  For example, the Prasad, the Kate Prasad case or the Lhasa case where, you know, the Indo-Fijians were, had one isolated incident of, say, stonings or threats or something like that. However, this is a pattern of persecution. It didn't happen just one time. It happened multiple times over a period of years. But the two instances in which the police were directly involved, according to his testimony, number one is where they stop it and then they hit him and then they release him after three hours. And the other one you didn't mention, but it's here. The police stop the bus, ask him for I.D., take him off the bus, and they take a bribe. All right. That's correct. And it goes to his liberty. So you don't have to only suffer physical harm. And at some later point, at a different instance, the police take him and tear up his I.D. and ask for a bribe. So what we have in terms of police directly doing things, they hit him. I'm not sure. His word is hit, so I won't say beat up. They hit him, they release him after three hours. Another instance, they take him off a bus and ask for a bribe. Another instance, they tear his I.D. up. Is that the extent of direct police involvement? Direct police involvement, yes, Your Honor. So I would submit that the immigration judge's credibility finding in regards to whether or not Mr. Martinez, as far as the fear when he was apprehended in August of 2001, that fear is not a necessary component of past persecution. So there's two separate avenues for refugee status. One is past persecution. The other is a well-founded fear. The fact that Mr. Martinez didn't fear going back to Guatemala has no nexus whatsoever with whether or not he's been past persecuted. That's like an abusive relationship, you know, where the abuse becomes the norm, it's accepted, and the victim doesn't necessarily fear the persecutor. And Mr. Martinez gave a plausible explanation in any event. Mr. Martinez said that the reason he didn't fear is because he was coming right back. And, in fact, he did. Four months later, Mr. Martinez went back to Guatemala, tried to get a visa, tried to go through the legal means, was denied, and instead just returned illegally four months later. So that's why he wasn't scared, Your Honor. Finally, the past persecution component is the immigration judge relied on Pedro Mateo, V.I.N.S., and Pedro Mateo, V.I.N.S. is a forced recruitment case, and it doesn't stand for the proposition that the immigration judge stated that somehow or other the alien, another Guatemalan named Pedro Mateo, suffered more than Mr. Martinez in this case, and so, therefore, Mr. Martinez is precluded based on the fact that he didn't suffer enough. Pedro Martinez was denied for a lack of nexus and not for a failure to illustrate persecution. As such, we respectfully request that this Court remand this case to the BIA to grant withholding of relief, withholding of removal of relief, and exercise of discretion based upon, in regards to asylum, based upon past persecution. Thank you. May it please the Court. My name is Anne Tumaya. I represent the United States Attorney General. This is a case where petitioner simply did not meet his burden of proof. The record reveals two problems with his claims. First, the evidence contradicts his claims that he will be constantly attacked and killed because he is a Garifuna. Secondly, even if we were to assume that he is credible, the events that he describes do not amount to past persecution or well-founded peer-to-peer. Don't we have to assume that he's credible as to the specific incidents? Your Honor, we do. The immigration judge stated that he believed that the incidents arose. However, the immigration judge stated that he did not believe petitioner's claim that he would be constantly attacked and killed. So we do have to take – because you just said if he would deem credible as to the specific incidents, but we do have to deem him credible as to the specific incidents, not as to this general statement of always being followed and always being harassed. Yes, Your Honor. Okay. So let's start from there, then, that the specific incidents are credible. Even if we were to assume that the specific incidents are credible – Not even if we're to assume. Specific incidents occurred. Yes, Your Honor. Okay. The incidents occurred. And even if we were to assume that these incidents established that he would be constantly attacked and subject to murder, there is not enough evidence here – You wouldn't assume that. I'm sorry, Your Honor? You don't have to assume that, that he's going to be constantly attacked and subject to murder. Your Honor, there is no basis for assuming that. However, that is his allegation. In any event, here, let's take a look at what is in the record. The record contains information that – Well, I think Judge Fletcher pretty much outlined what's in the record. And those are the incidents that the immigration judge found that he was credible about. Yes, Your Honor. And seven of those incidents occurred prior to him coming to the United States and – It's very short in the first place. And what it consists of is sort of a repetition of a lot of things that he's noting from the record. The only finding there is in the body of the opinion is the credibility finding. And then he goes on and sort of describes the state of life and immigration events. He describes what happened to the person. And he talks about what he reviewed. And you wait for the findings. And the only time you come to a finding is in the last paragraph where he says, I find the respondent has not made out an objective component of his asylum. He doesn't even say what component we're talking about. Your Honor, he states that he – Mr. Martinez has not satisfied his burden of proof in terms of establishing eligibility for asylum. And if we take a look at the record, it substantiates that conclusion. Well, yes, that's his overall conclusion. But generally we expect something more in the way of findings than he didn't carry his burden to win the case. Your Honor, he also – the immigration judge's decision also indicates that part of the basis for the conclusion of non-eligibility was because he had not – Mr. Martinez had not established past persecution or well-founded fear of persecution. Well, he may indicate that. But, you know, looking for a finding that says this does not rise to the level of persecution, for example. Now, I think obviously that's what the immigration judge had in mind when he tells his story about what's happened and what the rules are and all of that. But I – what conclusion one draws from this, I don't know. But I can't think of an opinion I've seen before that didn't have any finding as to which elements were or were not met and that only left you with a sentence in the last paragraph that says he hasn't made out an objective concomitant. That sounds like a general conclusion rather than a specific finding of which element or elements he didn't meet. Maybe it's enough. I gather you think it is. Yes, Your Honor. It is. First of all, in terms of determining whether or not the immigration judge's decision is supported by substantial evidence, we take a look at the immigration judge's conclusion. We can take a look at his findings of fact as well as the reasoning he provides to establish that in terms of the objective component. What are his findings of fact? Tell me which findings of fact you're relying on. Your Honor, if Your Honor will allow me to retrieve the record. I will step away from the podium for one moment in order to just indicate. It's a general assessment. However, in order for me to refer to the pages, I will need a moment. No, that's all right. That's okay. Your Honor, we must take a look at the context of this decision as a whole. The issue before this Court is whether or not the record supports a finding that Petitioner did not satisfy his burden of proving eligibility for asylum and withholding. And if we take a look at the record, we find that clearly the immigration judge's decision is supported and that there's nothing to compel a contrary conclusion. We take a look at the incidents that have occurred. Here are seven of those incidents occurred prior to the Petitioner coming to the United States on four different occasions, four different occasions when Petitioner could have claimed his alleged fear of persecution in Guatemala. And then if we take a look specifically at the one incident that arose after he determined that he was going to leave Guatemala, that one incident occurred in April 2000. Well, subsequent to April 2000, Petitioner had two opportunities to come to the United States and let the asylum officers know that he was afraid of coming to Guatemala. What happened instead was that he returned to Guatemala for nine months. During those nine months after the last April 2000 incident, nothing apparently happened. And then he met with an asylum officer who specifically asked him, are you afraid of returning to Guatemala? He stated no, that he was not. He indicates that he didn't understand the concept of asylum. But there's no need to understand the concept of asylum when one merely knows that he is afraid or he is not afraid. Here he indicated he was not afraid. Moreover, Petitioner's family still resides in Guatemala without problem. He resided in Livingston apparently without problem during the entire time that he was in Guatemala. Let me ask you about one other subject. The credibility finding, which your opponent characterizes as a mixed credibility finding, where he says, I'm prepared to accept the respondent's testimony that he did have acts of harassment or discrimination imposed against him. I find other portions of his testimony to be embellished and exaggerated, such as assertions that he was constantly being threatened and pursued by people because of his ethnicity. All right, let's just stop there. Do you agree that he found some of the elements of the story, the specific incidents, credible, but not the general allegations that he was followed and threatened generally? Is that what the finding is? Your Honor, the finding is that the immigration judge found that these incidents occurred and that they exemplified harassment and discrimination, but he found that it was incredible to reach the next statement that these incidents amounted to constant attacks and were a basis for a fear of murder. No, no, wait, wait, wait. That the incidents amounted to constant attacks? That they were a basis for his alleged fear of being in danger of constant attacks. I thought the incredible or he found incredible was that in addition to those incidents, he was generally followed and harassed as a general practice. Yes, Your Honor. That's what he found incredible. Your Honor, it's a combination of both. First, in terms of the factual finding, he found incredible that. Well, my question to you is what is the basis for the credibility finding? What, in his opinion, tells us what he based his finding of lack of credibility on? Your Honor, there are three grounds. First of all, the – In the opinion, where he says the basis for the lack of credibility. Your Honor, although it may not necessarily have been organized in as clear of a fashion as we would like, the immigration judge refers to the fact that petitioner's own statements and his experience contradicts his assertion that he was constantly going to be attacked or that there was generalized fear of being followed. The petitioner stated that he had experienced these incidents, but then in April 2000, he decided that after the police had torn up his identification, that that would be the beginnings of his planning to leave Guatemala and come to the United States. However, there were never any incidents after the fact. That's inconsistent with his claims that if he were to come back, he would experience constant problems or generalized threats. The – if Your Honor will allow me to respond to the question. The other problems that petitioner had claimed are not credible, given that the country conditions evidence that was submitted by petitioner are consistent with his allegations of generalized threats or problems if he were to return to Guatemala. This Court has acknowledged in Guanacalo that country conditions evidence generally provide context to assessing an alien's credibility. And here, there's nothing in the country conditions to suggest that there's any kind of generalized threat of persecution or dangers that petitioner alleges. So the immigration judge was correct in finding him incredible. So even if the court were to take some issue with, as petitioner asserts, the fact that he was able to get a job and have an education, which is different from other individuals in Guatemala who are in his same situation, including his family members, then there are other grounds for supporting the adverse credibility finding. And in Wang, this Court has stated that as long as there's one ground for which the evidence supports that finding, the Court is bound by the adverse credibility finding. Here, there are three different bases for supporting adverse credibility finding. And there's also substantial evidence to support that petitioner does not warrant asylum and withholding because he's not established and met his burden of proving that he's eligible. All right. Thank you, counsel. Your Honors, I would submit that the issue of credibility, the mixed credibility finding, is essentially a red herring. We can even concede the fact that the immigration judge found, the government has conceded that the eight incidents occurred. Even assuming that Mr. Martinez was not constantly threatened or constantly pursued, we still have these eight incidents. So everything else, all the credibility finding, refers to whether or not he was constantly threatened or constantly pursued. So just assuming we can throw that out, the record compels a finding of past persecution. The record compels a finding that Mr. Martinez is eligible for at least withholding. Although the Court may not be able to grant asylum due to the Ventura decision, the Court can certainly remand with instructions for the BIA to exercise its discretion. It's important to note that the immigration judge's decision was based in part, that the respondent, or excuse me, the petitioner, Mr. Martinez, didn't suffer persecution, was based in part on the fact that Mr. Martinez didn't receive medical treatment on any of the times that he alleged that the incidents occurred of physical harm. Somehow or other, the immigration judge is stating that that's required. There's no requirement, there's never been a requirement from this Court to seek medical treatment. Of course, there's no such requirement. And I don't see the immigration judge as having said it's required. But the problem is, what evidence do we have as to the severity of the physical injury? And he's pointing out that, well, one evidence that we might have is medical treatment. We don't have that. Obviously, if we have other evidence that it was terribly severe, well, okay, there it is. But there's not a lot of other evidence is the problem. And I understand that, Your Honor. And I think that what the immigration judge was doing was it's kind of like an extension of a caper side case where there was a one incident, and the Court found because they didn't seek medical treatment on this one isolated incident that happened during this tumultuous time during the coups, that somehow or other, because it wasn't extreme, that it couldn't be a basis. We have more than that here, Your Honor. Thank you. Thank you, Counsel. The case is arguably submitted.
judges: Reinhardt, W. Fletcher, Bybee